UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES PAGE,                                    Case No. 07-14873

            Plaintiff,               David M. Lawson
v.                                               United States District Judge

COMMISSIONER OF                                  Michael Hluchaniuk
SOCIAL SECURITY,                                 United States Magistrate Judge

            Defendant.

_____/

## REPORT AND RECOMMENDATION
## CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 12, 22)

## I.    PROCEDURAL HISTORY

Plaintiff filed his complaint against the Commissioner on November 13,

2007.  (Dkt. 1).  District Judge David M. Lawson referred this matter for all

pretrial purposes to Magistrate Judge Steven D. Pepe on that same date.  (Dkt. 3).

This matter was reassigned to the undersigned on January 14, 2008.  (Dkt. 4).  The

Commissioner filed an answer to the complaint and transcript on May 21, 2008.

(Dkt. 8, 10).

Plaintiff filed a motion for judgment on June 11, 2008.  (Dkt. 12).  On

August 1, 2008, the Commissioner filed a motion for summary judgment.  (Dkt.

22).  On June 20, 2008, plaintiff then filed an amended complaint for class action.

(Dkt. 14).  This pleading was stricken because plaintiff failed to comply with

Local Rule 7.1, Local Rule 15.1, and Federal Rule of Civil Procedure 23.  (Dkt.

17).  On July 11, 2008, plaintiff filed a motion to amend the complaint, seeking to

bring a class action on behalf of all claimants who had their social security

benefits calculated like plaintiff.  (Dkt. 18).  This motion will be disposed of via

separate order of the Court.

For the reasons set forth below, the undersigned **RECOMMENDS** that the

Court **DENY** plaintiff's motion for judgment, **GRANT** defendant's motion for

summary judgment, **DISMISS** plaintiff's complaint in part for want of

jurisdiction, and **AFFIRM** the findings of the Commissioner.

## II.    STATEMENT OF FACTS

A.    Plaintiff's Complaint

On September 23, 1999, plaintiff filed an application for disability

insurance benefits under Title II (DIB) and supplemental insurance income (SSI)

under Title XVI.  Plaintiff's claim was initially denied, but it was determined, on

November 27, 2002 that he was partially disabled as of May 27, 2001.  On March

31, 2003, plaintiff filed an application for reconsideration seeking to withdraw his

SSI application.  *Id.*  On April 4, 2003, his application for reconsideration was

denied.  On April 8, 2003, plaintiff filed a request for a hearing.  A hearing was

held on April 18, 2006.  On June 9, 2006, the ALJ issued an unfavorable decision.

Plaintiff filed a request for review with the Appeals Council and on August 22,

2007, the ALJ's decision was affirmed.  Plaintiff asks the Court to reverse the

decision of the ALJ and allow plaintiff to withdraw his application for SSI

benefits.

> B.    Administrative Record

Plaintiff filed concurrent applications for DIB and need-based SSI benefits

(Tr. at 63-65).  In November 2002, an ALJ found that plaintiff was disabled,

effective May 2001.  (Tr. at 40-46).  The SSA calculated and paid out plaintiff's

SSI back benefits before his DIB back insurance benefits.  When plaintiff applied

for, and was granted, interim disability assistance from the FIA, he had signed an

IRA with FIA.[1]  Plaintiff agreed to reimburse FIA for that assistance, should he

receive SSI from the Agency.  The SSA distributed plaintiff's SSI back benefit

amount of $10,809.  (Tr. at 295).  As part of that distribution, FIA received

$4,620, the amount paid to plaintiff under the IRA.  (Tr. at 284, 295).

Subsequently, plaintiff received at least two monthly checks based on his SSI

---

[1]  While it is undisputed that plaintiff signed a valid and enforceable IRA, the undersigned is unable to locate a copy of this agreement in the record provided by the SSA.

eligibility.  (Tr. at 303).  Once plaintiff started receiving DIB of $602, he was no longer eligible for the lower SSI of $552.  (Tr. at 297, 303).

On March 31, 2003, plaintiff sought to withdraw his application for SSI. (Tr. at 294).  On April 4, 2003, the SSA denied the request.  (Tr. at 291-93).  The SSA explained that, if plaintiff wished to reimburse all the monies already paid on the claim, he could do so and the SSA would permit him to withdraw his SSI application.  (Tr. at 291).  Instead, plaintiff requested a hearing and, on April 18, 2006, plaintiff's representative, Louis Anderson, appeared, without plaintiff, and discussed the case with ALJ Lubomyr M. Jachnycky.  (Tr. at 443-61).  Mr. Anderson explained that he and plaintiff had decided their best course of action was to withdraw plaintiff's application for SSI. (Tr. at 455).  As discussed below, the ALJ ultimately rejected plaintiff's claim and subsequently, plaintiff filed this lawsuit.

      C.    Findings of the ALJ

On September 23, 1999, the claimant filed applications for Disability Insurance Benefits and Supplemental Security Income payments.  Both claims were denied initially and on reconsideration, and a request for hearing was timely filed on August 14, 2000.  Following a hearing before another ALJ, a partially favorable decision issued on November 27, 2002 finding that plaintiff was

disabled on May 27, 2001. (Tr. at 19). Plaintiff had signed an Interim Reimbursement Agreement (IRA) with the Michigan Family Independence Agency (FIA) in exchange for interim state disability assistance while his application for SSI was pending. *Id*. Plaintiff filed a request for reconsideration on March 31, 2003 seeking to withdraw his application for SSI and have his DIB benefits processed first. *Id*. The Social Security Administration denied the request on April 4, 2003 because plaintiff's first SSI check had already been sent to the FIA to reimburse it for interim assistance and money had been released to plaintiff. *Id*. The SSA took the position that if plaintiff wished to refund the $9759.03 paid to him and to the FIA, then it could permit withdrawal of the SSI claim. *Id*. Plaintiff's representative, attorney Carl A. Anderson, filed a request for hearing on April 8, 2003. *Id*.

The ALJ stated the issue as follows: whether in concurrent claims, the SSA should pay DIB benefits first, instead of following the current practice of paying SSI first, reimbursing the state when applicable, and applying the windfall provision to retroactive DIB benefits. (Tr. at 20). Plaintiff's representative argued that the current practice results in an erroneous attorney's fee. *Id*. The ALJ first examined the language of 42 U.S.C. § 1320A-6, the "windfall" offset provision, which states:

Notwithstanding any other provision of this Act, in any case where an individual-

(1) is entitled to benefits under subchapter II of this chapter that were not paid in the months when they were regularly due; and (2) is an individual or eligible spouse eligible for supplemental security income benefits for one or more months in which the benefits referred to in clause (l) were regularly due, then any benefits under subchapter II of this chapter that were regularly due in such months or months, or supplemental security income for such month or months, which are due but have not been paid to such individual or eligible spouse shall be reduced by an amount equal to so much of the supplemental security income benefits, whether or not paid retroactively, as would not have been paid or would not be paid with respect to such individual or spouse if he had received such benefits under title II in the month or months in which they were regularly due.

The ALJ also examined 20 C.F.R. § 416.1906, which provides that an interim assistance agreement authorizing the SSI program to repay the State becomes effective when the SSA receives it or is notified by the State that it exists, and it remains in effect (1) until the first SSI payment is made, (2) until there is a final unappealed determination that the claimant is not entitled to SSI, (3) until the claimant and the State both agree to terminate the authorization, or (4) if earlier than the other events listed, the date if any specified in the authorization for the authorization to end.  (Tr. at 20).

Plaintiff's first check, in the amount of $10,809.90 went to FIA, who took $4,620 to repay the interim assistance that plaintiff received and, from the reimbursed amount, paid plaintiff's attorney $1,155.00 or 25% of the $4,620. (Tr. at 20). Plaintiff received $6,189. Plaintiff also received SSI checks in May 2003 and June 2003. Once his DIB checks started, plaintiff had no ongoing eligibility for SSI because his DIB benefit was $602, while the SSI payment amount was $552 in that period with a $20 disregard. (Tr. at 21). Plaintiff had received a total of $12,519.03 in SSI payments with a final check in June 2003. According to the ALJ's decision, this money would have to be repaid if plaintiff wanted to withdraw his application for SSI. (Tr. at 21).

According to the ALJ, the SSI windfall provision only applies to months of concurrent benefits. Further, 13 months are potentially excluded from offset (a 12 month retroactive period if it exists and the month of application in which DIB can be paid but not SSI benefits). The ALJ explained that the issue is "what happens to the months after the month in which the SSI application is filed." (Tr. at 21). As noted by the ALJ, according to the current SSA policy, the SSI application is effectuated first, this was not always the SSA's policy. (Tr. at 21).

The ALJ explained that the windfall provision was enacted by Congress in 1980 because a claimant could be paid unreduced SSI benefits for several months

because it took so long to get DIB paid, even though the SSA had a financial

incentive to pay DIB as quickly as possible because any unreduced SSI benefits

did not have to be repaid. (Tr. at 21).  Since 1982, SSI benefits have to be

deducted from DIB pursuant to the windfall provision.  (Tr. at 21).  The current

policy of the SSA remains to pay the SSI benefit first.  (Tr. at 21).  According to

the ALJ, this makes no difference to the amount of the attorney fee, except when a

claimant is receiving interim disability assistance from the state, because that

assistance is repaid from SSI benefits for the months the state paid the disability

assistance.  (Tr. at 21).  The first retroactive SSI check goes to FIA, which deducts

the amount it paid for those concurrent months and sends the rest to the claimant.

State interim assistance in Michigan is much less than SSI for the same month.

However, FIA pays the attorney 25% of the reimbursed amount.  (Tr. at 21).  The

balance of a claimant's attorney fee has to come from the claimant's retroactive

SSI claim, but the three checks should total (1) 25% of the total retroactive amount

from DIB, interim reimbursement by the State of Michigan reimbursement, and

the retroactive SSI check, or (2) $5,300 in all, whichever is less.  (Tr. at 21).

The ALJ explained that, for many years before and after the windfall

provision was enacted, the SSA field offices were adjudicating title II claims first.

(Tr. 21).   Initially, it was to avoid double payment, and after the windfall

provision was in effect, it was to reduce the SSI workload by not adjudicating cases where there would be no ongoing SSI eligibility. (Tr. at 21). Effective September 8, 1995, SSI claims were to be adjudicated first so that some SSI (and in Michigan, Medicaid), could be paid. (Tr. at 21). Moreover, development did not have to be complete to pay SSI, since most or all of the money would be reimbursed from retroactive DIB to which the claimant unquestionably was entitled. (Tr. at 21). It would only have to be "complete enough" to avoid erroneous Medicaid entitlement. Therefore, all successful SSDC claimants would get SSI payments more quickly, and most SSDC claimants in Michigan do not get state disability interim assistance. (Tr. at 21).

Since September 8, 1995, it has been the SSA's national policy that SSI should be paid first. (Tr. at 21). The attorney fee is supposed to be 25% of retroactive DIB before the offset and the amount for the attorney fee is withheld before the windfall provision is applied. (Tr. at 22). In fee agreement cases, the fee is known and, if necessary, the amount of the windfall offset is adjusted down by adjusting the DIB to account for the attorney fee. (Tr. at 22). Previously, the SSA used the net amount after the offset in determining the attorney fee due. (Tr. at 22). The ALJ noted that the current policy is more generous to attorneys. (Tr. at 22). The SSA has also started withholding past due amounts in SSI only cases.

(Tr. at 22). In this case, the representative could and did elect to charge claimant a 25% fee up to the capped amount after the monies received from DIB and the FIA were deducted on the retroactive SSI benefits sent to plaintiff after FIA deducted the reimbursed amount. (Tr. at 22).

The ALJ noted that the current SSA policy favors payment of attorneys and qualified representatives and that there is also a strong SSA policy to reimburse the state from retroactive SSI benefits for interim assistance. (Tr. at 22). According to the ALJ, plaintiff's representative wants to withdraw the SSI application with no thought to what effect this would have on Medicaid eligibility. (Tr. at 22).

The ALJ concluded that because plaintiff was already paid SSI benefits, plaintiff could only withdraw the SSI application if he refunded all SSI benefits already paid. (Tr. at 22-23). "All benefits" includes those paid to the State of Michigan on plaintiff's behalf. (Tr. at 23). The ALJ acknowledges that plaintiff's representative is correct that if the SSI application is withdrawn before the retroactive DIB monies are released, then there would be $7,120.00 due from DIB benefits withheld pursuant to the windfall offset provision that could be applied to repay the SSI. (Tr. at 23). However, the ALJ noted that on the request for hearing, plaintiff and his attorney requested that all the DIB monies be returned.

(Tr. at 23). Further, the total SSI paid including reimbursement to the State of Michigan was $12,519.03, given that plaintiff received SSI benefits in an unreduced amount through June 2003. (Tr. at 23). Plaintiff was still accepting SSI checks even though he had stated on March 31, 2003 that he wanted to withdraw his application for SSI. (Tr. at 23). The ALJ concluded that, at that time, plaintiff was required to come up with about $5,000 in addition to stating that the monies previously withheld from his DIB as a part of the windfall offset should be used to refund the balance of SSI payments received. (Tr. at 23). The ALJ also noted that there appears to be no benefit to the claimant in withdrawing the SSI application and, in any event, the money was not withheld then, so plaintiff would have to come up with $12,519.03 now to withdraw the SSI application. (Tr. at 23).

The ALJ pointed to the SSA's well-established a policy that protects potential entitlement to Medicaid, which virtually all SSI recipients need to cover their disability related medical expenses. (Tr. at 23). And, while this particular plaintiff may not have used Medicaid, most SSI recipients need it to pay tor treatment before they are eligible for Medicare with Medicaid. (Tr. at 23). Further, plaintiff was required to file for SSI because he had been awarded state

disability assistance; the SSI program required that he file for DIB as well.  (Tr. at 23).

The ALJ rejected plaintiff's argument that FIA was only entitled to claim the first six months because the Social Security Act reimburses all months after it receives notice of the interim assistance reimbursement agreement in which a claimant received state disability assistance or interim assistance if he subsequently becomes eligible for SSI in those months.  (Tr. at 23, citing, 20 C.F.R. § 416.1906).  At the hearing, plaintiff's representative claimed that the SSA now pays DIB claims first, having changed its policy again.  (Tr. at 23).  The ALJ held the record open so that evidence of the alleged change in policy could be submitted, no such evidence was submitted as of the date of the ALJ's decision. (Tr. at 23).  The ALJ also rejected the representatives' claim that the SSA's policy resulted in an overpayment in fees for representation, which he refunded to plaintiff.  (Tr. at 23).  The ALJ concluded that even if the representative was erroneously paid too much as an SSI fee, that does not prove that DIB should be paid first.  (Tr. at 23).  Since the SSA was not withholding fees from retroactive SSI benefits in 2003, the representative was responsible for collecting directly from a claimant, and any error in calculating the correct amount of the fee was the attorney's error, not the SSA's error.  (Tr. at 23-24).

The ALJ noted that the Circuits were split as to whether the Social Security Act requires that DIB and SSI benefits be paid in any particular order.  For example, in *Mazza v. Sec'y of Health and Hum. Serv.*, 903 F.2d 953 (3d Cir. 1990), the Third Circuit held that SSI should be paid first because of the concern over Medicaid eligibility.  (Tr. at 24).  In *Burnett v. Heckler*, 756 F.2d 621 (8th Cir. 1985), the Eighth Circuit held that the Social Security Administration could pay DIB first if it wanted to do so and could calculate the attorney fee on the post-offset amount of DIB.  (Tr. at 24).  The ALJ rejected plaintiff's claim for several reasons:  no Circuit Court has held that the current policy of paying SSI benefits first is invalid; the SSA has a strong policy to reimburse states for interim assistance; the SSA has a strong policy to protect Medicaid eligibility in states where eligibility for SSI means automatic eligibility for Medicaid; and plaintiff's representative has presented no written evidence that the policy of paying SSI benefits first has changed recently or that the change is retroactive.  (Tr. at 24).

Thus, the SSA correctly paid SSI benefits before releasing retroactive DIB benefits.  (Tr. at 24).  While plaintiff had a right to withdraw his SSI application, all monies received from the SSI program, including reimbursement of the State of Michigan for state interim disability assistance, would have to be repaid first and it was not done in this case.  (Tr. at 24).  Based on the foregoing analysis, the ALJ

concluded that (1) plaintiff was correctly paid SSI benefits before receiving his DIB payments; (2) the FIA was correctly reimbursed all state disability interim assistance received; and (3) plaintiff's representative's ability to collect a fee for all services rendered, including from FIA, was not adversely affected.  (Tr. at 24).

    C.    <u>Parties' Arguments</u>

        1.    Plaintiff

Plaintiff argues that 20 C.F.R. § 416.355 clearly states that if an application for withdrawal is approved, the SSA will treat the application as if it never existed. (Dkt. 12).  And, if an application never existed, according to plaintiff, no monies should go to the State of Michigan for reimbursement.  Plaintiff argues that the IRA will still exist, but DIB monies cannot be used to reimburse the FIA as set forth in FIN's program eligibility manual.  Thus, any SSI monies paid to plaintiff outside of those monies sent to the state for reimbursement "can be paid back, either by the plaintiff, or through use of a cross-recovery program used to collect overpayments.  Then those monies reimbursed to the State can be returned to the Plaintiff."  (Dkt. 12, p. 4)

        2.    Defendant

Defendant first argues that plaintiff's claim should be rejected because he completely failed to develop his "seven assertions" in his motion for judgment.

Defendant summarizes plaintiff's "seven assertions" as follows: "that he has the right to request a withdrawal of his SSI application; to have overpayment monies recovered from his DIB monies; to have his SSI withdrawal application approved; to have all monies paid to the FIA returned; to have his SSI application treated as if it never existed; to have the FIA's interim reimbursement authorization not enforced against his retroactive DIB monies; and that he should have summary judgment because there were no genuine issues in this case."  (Dkt. 22, p. 6). According to defendant, without providing a reason for the agency to accept his request to withdraw his SSI application without repayment, plaintiff merely asserts that, if his request for withdrawal was approved, the agency would treat the application as if it never existed.  Although plaintiff cites to the correct regulation, he only focuses on the actions that should be taken once an application has been withdrawn and fails to acknowledge that the SSA has not approved that step. (Dkt. 22).  Thus, according to defendant, the only argument plaintiff appears to be raising is that, based on 20 C.F.R. § 416.355, the SSA *should* have approved his withdrawal of his SSI application.  Based on the foregoing, defendant suggests that all other "arguments" raised in plaintiff's motion should be rejected because such skeletal assertions are insufficient to raise an issue on appeal and do not preserve a plaintiff's claim.  (Dkt. 22, citing, *McPherson v. Kelsey*, 125 F.3d 989,

995-96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones.")).

Defendant also argues that the ALJ correctly found that, while the regulations permitted plaintiff to withdraw his SSI application, he could do so only after satisfying the conditions for withdrawal set forth in the regulations. According to defendant, plaintiff has not even alleged that he satisfied the requirements of the regulation, and has pointed to no legal authority to support an argument that an exception to the regulatory requirements should apply here or that plaintiff is otherwise not required to comply with the regulations.

According to defendant, the regulations governing withdrawal of SSI applications are simple.  If a claimant wants to withdraw his application after the SSA has already made a determination on the claim, as in this case, then he must satisfy the requirements set forth at 20 C.F.R. § 416.355(b).  Those requirements include the repayment of all benefits that have already been paid based on the application (or satisfaction on the part of the SSA that the benefits will be repaid). 20 C.F.R. § 416.355(b)(3).  Here, plaintiff has not repaid the benefits that he received based on his SSI application.  (Dkt. 22, citing, Tr. at 23, 303).  Although

plaintiff suggests that an overpayment could be used to recover SSI money from his DIB, he did not develop this point at the hearing and, defendant argues that an overpayment would not necessarily insure repayment. (Dkt. 22, citing, 20 C.F.R. § 404.502a (an overpaid individual may receive a waiver of his need to repay)). Defendant argues that, therefore, plaintiff has failed to comply with the regulatory requirements for withdrawal of an SSI application, and the ALJ properly disapproved plaintiff's request to withdraw his application without repayment. (Dkt. 22).

Defendant also argues that, to the extent the Court may determine that plaintiff did not waive other arguments, the ALJ's decision is supported by substantial evidence and should be affirmed. In his decision, the ALJ concluded that plaintiff was properly paid SSI before his retroactive DIB was released. (Dkt. 22, citing, *Baker v. Bowen*, 839 F.2d 1197 (6th Cir. 1988) (upholding the Commissioner's practice of calculating SSI first)). Defendant also points to the Ninth Circuit's observation that "[a]ll the other circuit courts that have addressed the issue" have concluded that the Commissioner's procedure of calculating SSI first "is entitled to deference." (Dkt. 22, citing, *Guadamuz v. Brady*, 839 F.2d 762, 770 (9th Cir. 1988)).

Defendant also argues that the Court should reject plaintiff's suggestion that the SSA should repay him the funds that were submitted to the State under the interim reimbursement program. Defendant points out that plaintiff has admitted, through his representative, that he had agreed to repay the FIA those benefits. (Dkt. 22, citing, Tr. at 449). Based on that contract, the SSA reimbursed the FIA $4,620, the amount the FIA gave plaintiff during the pendency of his application. (Dkt. 22, citing, Tr. at 295, 20 C.F.R. § 416.525 (SSA reimburses the state for interim benefits)). Defendant argues that plaintiff has not presented any evidence or argument that he no obligation to repay, or that full repayment to the FIA was incorrect and that the interim reimbursement agreement is a valid assignment of benefits, that was in place on the date that the SSA submitted the funds to the state. (Dkt. 22).

       3.    Plaintiff's reply

According to plaintiff's reply, his position is not based on which claim was processed first, DIB or SSI, but rather, is about repayment to the State of Michigan, specifically, what to do with the IRA and what to do with the money sent to the FIA because plaintiff had an SSI application. (Dkt. 23). According to plaintiff's reply, as to which claim should be processed first, the procedure that "best serves the plaintiff should always be given the highest consideration."

Plaintiff argues that he does not have to repay the funds from SSI application to allow his request for withdrawal to be approved, but "will be happy to agree to refund the [SSI] monies, if his request for withdrawal of his [SSI] application is approved." Plaintiff suggests that the SSI monies "that were paid for a couple of months could be deducted from the monies sent to the State of Michigan, and after the adjustment the remainder could be sent to the plaintiff, which plaintiff says will satisfy the requirement of the monies being recovered for SSI benefits."

According to plaintiff, the important question (which is being ignored by the Commissioner) is what to do with the IRA, once the request for withdrawal of the SSI application is approved? If the request for withdrawal of the SSI application is approved, the SSA must treat the SSI application as if it never existed. And, plaintiff argues, if the SSI application never existed, then "it is impossible to reimburse the State of Michigan from [SSI] funds that never existed." (Dkt. 23). Plaintiff says that the IRA "should still exist and should still be valid, but the agreement is just not enforceable against retroactive or monthly [DIB] monies." Plaintiff acknowledges that he offers "a technical solution to benefit" himself and that he "feel[s] but ha[s] no legal basis that [SSI] benefits should be paid for the first five months of the waiting period of [DIB] benefits, then [DIB] benefits would start on the sixth month." (Dkt. 23). Plaintiff says that

the State of Michigan would be entitled to the first five months of SSI benefits and monthly DIB benefits would be paid accordingly, which, according to plaintiff is "just and equitable, but the Social Security Administration does not have this procedure written into its rules or regulations." (Dkt. 23).

## III.   DISCUSSION

### A.   Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions

absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

The Commissioner's implementation of the Social Security Act and interpretation of statutory terms are accorded great deference. *Detson v. Schweiker*, 788 F.2d 372, 375 (6th Cir. 1986). "Because Congress has entrusted the primary responsibility of interpreting a statutory term to the [Commissioner] rather than to the courts, [the Commissioner's] definition is entitled to 'legislative effect.'" *Id.*, quoting, *Herweg v. Ray*, 455 U.S. 265, 275 (1982) (internal quotation marks omitted).

    B.    <u>Analysis and Conclusions</u>

        1.    Order of claims processing and payment.

While plaintiff's claims are not entirely clear and he argues at one point that his claim does not rest on which of his claims was first processed, the undersigned

Report and Recommendation
Cross-Motions for Summary Judgment
*Page v. Comm'r*; 07-14873

suggests that a review of this process sheds light on the necessary and appropriate analysis of plaintiff's claims.  The undersigned further suggests that the Commissioner's determination to process plaintiff's SSI claim before his DIB claim is fully supported and authorized by prior decisions of the Sixth Circuit and no changes in the statutory scheme have changed this result.

As the Sixth Circuit has observed, while awaiting a determination of DIB and SSI eligibility, many claimants turn to the state for interim SSI assistance. *Pappas v. Bowen*, 863 F.2d 227, 299 (6th Cir. 1988).  Just like in this case, a claimant receiving this temporary aid typically authorizes the Commissioner to withhold funds sufficient to reimburse the state from his eventual retroactive SSI award.  *Id.*  The Social Security Act specifically provides for this reimbursement practice, but only allows SSI, not DIB, awards to be used for this purpose.  *Id.* The Sixth Circuit further explained windfall offset provision and its approval of the Commissioner's practice of calculating the SSI claim first:

> ...Congress in 1980 enacted a "windfall offset" provision to Title II, 42 U.S.C. § 1320a-6 (1982), so that when a claimant is granted a retroactive Title II award for a period in which he also was owed SSI, the Title II payment is reduced by the amount of SSI authorized to the claimant that would not have been awarded had the claimant been given his Title II benefits when due, rather than retroactively. The Secretary, applying the windfall offset provision, calculates first a claimant's SSI benefits,

then the Title II benefits, and then offsets Title II benefits due by the SSI amount, 20 C.F.R. § 404.408 (1988); *see White v. Bowen*, 835 F.2d 974 (2d Cir.1987).  Because Title II benefits are not factored into the SSI computation as income, the SSI figure is higher than if Title II would have been calculated first.  Thus, the state, able to anticipate only Title XVI funds, generally can expect to be reimbursed fully for its interim SSI payments.  From a claimant's perspective, this is all purely a matter of bookkeeping, as his overall cash entitlement is not affected by the order of computations.

Likewise, in *Baker v. Bowen*, 839 F.2d 1197 (6th Cir. 1988), the Sixth Circuit upheld the SSA's practice of calculating SSI first and found it consistent with Congressional intent.  "SSA has a valid reason to make the SSI calculation first." *Id*. at 1200.  "To encourage states to provide [interim] assistance, Congress provides that the claimant may authorize the Social Security Administration to withhold SSI benefits and pay them to the state as reimbursement for interim welfare assistance paid to the applicant." *Id*., citing, 42 U.S.C. § 1383(g)(1).  The Court also observed that "[i]f SSI is not calculated first when concurrent, retroactive awards of SSI and [Title II] benefits are made the state may never be reimbursed. This not only would contravene the Congressional intent to encourage state assistance during the interim period, but also would mean that the claimant receives a windfall: the full [Title II] amount plus welfare benefits that would never have been paid had the [Title II] monies been disbursed at the appropriate

time. The Secretary's practice of determining SSI initially and assuring that there is

SSI money available for reimbursement is therefore not capricious, but rather

consistent with Congress' goals." *Id.* at 1200-1201, quoting, *Wheeler v. Heckler,*

*787 F.2d 101 (3d Cir. 1986).*  The Sixth Circuit concluded that numerous policies

supported the SSA's approach, and no statutory amendments changed the Court's

earlier holding that the SSA "is not compelled to pay Title II benefits before

paying SSI benefits." *Baker*, 839 F.2d at 1201.  The undersigned suggest that,

similarly, plaintiff here offers no statutory or other support for any express or

implied claim that the Commissioner inappropriately calculated and paid SSI

benefits first.

> ### 2.      Application for withdrawal of SSI claim

With respect to plaintiff's claim that he is entitled to withdraw his SSI

claim, the undersigned suggests that it is woefully underdeveloped, admittedly

without legal authority, and should be rejected by the Court.  Further, the ALJ's

detailed and well-reasoned decision is supported by the substantial evidence.  If a

claimant wants to withdraw his application after the SSA has already made a

determination on the claim, as in this case, then he must satisfy the requirements

set forth at 20 C.F.R. § 416.355(b).  Those requirements include the repayment of

all benefits that have already been paid based on the application (or satisfaction on

the part of the SSA that the benefits will be repaid).  20 C.F.R. § 416.355(b)(3).
Here, plaintiff has not repaid the benefits that he received based on his SSI
application.  (Tr. at 23, 303).  Moreover, plaintiff did not present to this Court or
to the ALJ below, any evidence or argument that he had no obligation to repay the
state interim assistance, or that full repayment to the FIA was incorrect.  Plaintiff
also failed to offer any evidence or argument to this Court or to the ALJ that the
interim reimbursement agreement was not a valid assignment of benefits in place
on the date that the SSA submitted the funds to the state.  Although plaintiff
suggests that an overpayment could be used to recover SSI money from his DIB,
he did not develop this point at the hearing and, defendant argues that an
overpayment would not necessarily insure repayment.  (Dkt. 22, citing, 20 C.F.R.
§ 404.502a (an overpaid individual may receive a waiver of his need to repay)).
The undersigned agrees and suggests that plaintiff has failed to comply with the
regulatory requirements for withdrawal of an SSI application, failed to offer any
evidence or argument in support of his position, and the SSA properly disapproved
plaintiff's request to withdraw his application.

> 3.    Claim regarding interim assistance

According to plaintiff's reply, his position is not based on which claim was
processed first, DIB or SSI, but rather, is about repayment to the State of

Michigan, specifically, what to do with the IRA and what to do with the money sent to the FIA because plaintiff had an SSI application.  (Dkt. 23).  The undersigned suggests that, to the extent that plaintiff's claims attempt to dispute the interim assistance payments to the state, it is barred for want of subject matter jurisdiction.[2]  The SSI program found in Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* is a federal income-support program for needy individuals who are aged, blind or disabled.  *Trotta v. Sec'y of Health and Hum. Serv.*, 765 F.Supp. 29 (D. Mass. 1991).  Section 1383 of Title XVI contains the procedures for payment of SSI benefits, as well as an administrative scheme for resolving disputes between claimants and the SSA.  *See* 42 U.S.C. § 1383.  Section 1383(c) provides for the adjudication of claims for SSI benefits:

> (1)(A) The Commissioner of Social Security is directed to make findings of fact, and decisions as to the rights of any individual applying for payment under this subchapter. Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the

---

[2]  While the parties did not raise this issue, "'defects in subject matter jurisdiction cannot be waived by the parties and may be addressed by a court on its own motion at any stage of the proceedings.'"  *Fowlkes v. Nat'l Archive and Record Adm.*, 2006 WL 3545105, *3 (S.D. Ohio 2006), quoting, *Owens v. Brock*, 860 F.2d 1363, 1367 (6th Cir. 1988).

> evidence, and stating the Commissioner's determination
> and the reason or reasons upon which it is based. The
> Commissioner of Social Security shall provide
> reasonable notice and opportunity for a hearing to any
> individual who is or claims to be an eligible individual or
> eligible spouse and is in disagreement with any
> determination under this subchapter with respect to
> eligibility of such individual for benefits, or the amount
> of such individual's benefits, if such individual requests
> a hearing on the matter in disagreement within sixty days
> after notice of such determination is received, and, if a
> hearing is held, shall, on the basis of evidence adduced at
> the hearing affirm, modify, or reverse the
> Commissioner's findings of fact and such decision. * * *
>                                     * * *
> (3) The final determination of the Commissioner of
> Social Security after a hearing under paragraph (1) shall
> be subject to judicial review as provided in section
> 405(g) of this title to the same extent as the
> Commissioner's final determinations under section 405
> of this title.

Thus, SSI claims are generally reviewable to the same extent as Title II (DIB)

claims.

However, 42 U.S.C. 1383(g) governs reimbursement to states for interim

assistance payments and subsection (g)(5) provides that the "provisions of

subsection (c) of this section *shall not be applicable to any disagreement*

*concerning payment by the Commissioner of Social Security to a State* pursuant to

the preceding provisions of this subsection nor the amount retained by the State

(or political subdivision)."  (Emphasis added).  The *Trotta* court analyzed earlier,

and substantially similar, versions of these provisions of 42 U.S.C. § 1383.  It

concluded that § 1383(g)(5) "plainly manifests Congress's express intention that

decisions of the [Commissioner] *regarding reimbursements of interim assistance*

not be subject to judicial review under 1631(c) of the Social Security Act (or under

Section 205 of the Act, which section 1631(c) incorporates by reference)."  *Trotta,*

*765 F.Supp. at 32* (emphasis added).  The court further held that to "allow the

plaintiff to proceed in this court would be to thwart the efforts of Congress to

encourage states to offer interim assistance to SSI applicants while their

applications are pending."  *Id.* at 33; *see also West v. Sullivan,* 1993 WL 14472,

*1 (S.D.N.Y. 1993)* ("issues regarding the interim assistance reimbursement

program are not subject to judicial review.").[3]  Plaintiff says that the IRA "should

still exist and should still be valid, but the agreement is just not enforceable

_____

[3]  According to Social Security Law and Practice, "the provisions of the
Social Security Act providing appeal rights to SSI claimants do not apply to any
disagreement concerning payment by the SSA to a state for interim assistance
reimbursement nor to the amount retained by the state."  2A Soc. Sec. Law & Prac.
§ 35:183.  However, "a claimant has the right to appeal to the SSA if the claimant
disagrees with the total amount of money the SSA has withheld and sent to the
state for the interim assistance it provided to the claimant."  *Id.*  Notably, "[i]ssues
regarding the interim assistance reimbursement program are not subject to judicial
review under the Social Security Act and are to be dismissed for lack of subject
matter jurisdiction."  *Id.*  Rather, the "proper recourse for a claimant who has a
legitimate grievance regarding a decision by the SSA to reimburse a state for
interim assistance payments is to seek recovery from the state."  *Id.*

against retroactive or monthly [DIB] monies."  Plaintiff claims that FIA should

only be entitled to the first five months of SSI benefits and monthly DIB benefits

would be paid accordingly, which, according to plaintiff is "just and equitable, but

the Social Security Administration does not have this procedure written into its

rules or regulations."  (Dkt. 23).  The undersigned suggests that plaintiff's claim,

at least in part, falls squarely into subsection (g)(5).  Thus, to the extent that

plaintiff's claims relate to a "disagreement concerning payment by the

Commissioner of Social Security to a State pursuant to the preceding provisions of

this subsection nor the amount retained by the State (or political subdivision)," the

undersigned suggests that this Court has no subject matter jurisdiction.

## IV.   RECOMMENDATION

For the foregoing reasons, the undersigned suggests that the Court **DENY**

plaintiff's motion for judgment, **GRANT** defendant's motion for summary

judgment, **DISMISS** plaintiff's claims in part for want of subject matter

jurisdiction, and **AFFIRM** the findings of the Commissioner.

The parties to this action may object to and seek review of this Report and

Recommendation, but are required to file any objections within 10 days of service,

as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file

specific objections constitutes a waiver of any further right of appeal.  *Thomas v.*

*Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines any objections are without merit, it may rule without awaiting the response to the objections.

Date: February 19, 2009

s/Michael Hluchaniuk
Michael Hluchaniuk
United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

I certify that on February 19, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification to the following: <u>Derri T. Thomas, AUSA, Herman J. Anderson, and the Commissioner of Social Security</u>.

s/Darlene Chubb        

Judicial Assistant

Report and Recommendation
Cross-Motions for Summary Judgment
*Page v. Comm'r*; 07-14873
